NOTICE

Decision filed 03/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210374-U

NO. 5-21-0374

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| PATRICK FERRARI and BARBARA FERRARI, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) ) | Madison County. |
| v. | ) ) | No. 19-SC-2307 |
| THE VILLAGE OF GLEN CARBON, | ) ) | Honorable Thomas W. Chapman, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the record on appeal is insufficient to allow us to review the appellants' claims, we must presume that the trial court correctly applied the law and that the missing portions of the record would have supported the court's rulings. Where the appellants' claim of judicial bias is based upon statements the court allegedly made that do not appear in the limited record provided to us and upon allegedly incorrect adverse rulings, the appellants failed to overcome the presumption that the trial judge was fair and impartial.

¶ 2    The plaintiffs, Patrick and Barbara Ferrari, filed a *pro se* small claims complaint against the defendant, the Village of Glen Carbon, alleging that agents for the defendant caused damage to the plaintiffs' property when they operated and stored equipment on the plaintiffs' lawn without their permission. The equipment was used to repair a culvert running under the road adjacent to the plaintiffs' property. The court held that the defendant's entry onto the plaintiffs' property for purposes of making the repair was proper pursuant to a common law privilege to enter the property

1

of another for purposes of performing a legislatively imposed duty when reasonably necessary to do so. See Restatement (Second) of Torts § 211 (1965). However, the court found that the use of the plaintiffs' property to store the equipment after the repair was complete constituted a trespass. The court entered judgment in favor of the plaintiffs but awarded only nominal damages. The plaintiffs appeal, arguing that (1) they were denied their right to cross-examine one of the defendant's witnesses when the court refused to allow additional cross-examination after redirect examination, (2) the trial court demonstrated bias in favor of the defendant, and (3) the court engaged in an *ex parte* communication with the defendant's attorney. We affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4     On July 19, 2019, the plaintiffs filed a *pro se* small claims complaint against the Village of Glen Carbon and the Glen Carbon Police Department. The instant case is one of five small claims actions filed by the plaintiffs against the Village of Glen Carbon and related entities during the same time period. Although the actions involved separate claims, many of the proceedings on the cases were held together. In the complaint in this case, the plaintiffs alleged that the defendants parked heavy equipment in their yard "over a rainy weekend," thereby causing extensive damage to their property. They sought $1975 in damages. The incident leading to this litigation involved a repair to a culvert that ran underneath the portion of East Ingle Drive that abuts the plaintiffs' property.

¶ 5     On September 16, 2019, the defendants filed a motion to dismiss. They argued that (1) both defendants were immune under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2016)) and (2) the plaintiffs' complaint failed to

state a claim against the Glen Carbon Police Department because it did not contain any allegations concerning acts or omissions by members of the police department.

¶ 6     On December 18, 2019, the court granted the defendants' motion in part and denied it in part. The court dismissed the plaintiffs' claims against the Glen Carbon Police Department but ruled that the claims against the Village of Glen Carbon would proceed to a hearing on the merits. The court subsequently set the matter for a nonjury trial.

¶ 7     In February 2020, the plaintiffs filed a series of motions seeking jury trials against all original defendants in all five pending cases, including this one. Those motions came for a hearing on March 12, 2020. At that hearing, the plaintiffs voluntarily withdrew all their claims against the police department, including the claim in this case. The court granted the plaintiffs' request for a jury trial in one of the cases but denied their request with respect to the remaining four cases, including this case.

¶ 8     On July 30, 2021, the court held a combined hearing on this case and the three other pending nonjury cases. We note that the record contains only a brief excerpt from the transcript of that hearing. In pertinent part, evidence adduced at the hearing showed that the defendants repaired a culvert running under East Ingle Drive, which could not be accessed without entering onto the plaintiffs' property. The testimony further showed that the defendants left the equipment used in repairing the culvert on the plaintiffs' lawn over the weekend without permission.

¶ 9     After redirect examination of one of the defendant's witnesses and questioning of that witness by the court, the plaintiffs sought to cross-examine him further. The court stated, "We are out of time today." The court noted that the trial had lasted all day and that the court must "exercise its discretion with respect to the management of the court's time."

¶ 10    On October 28, 2021, the court entered an order containing written findings on all four nonjury cases. With respect to this case, the court first noted that all parties agreed that East Ingle Drive was a public roadway. The court then found that the defendant has the "right and obligation" to maintain the public roadway, including the need to repair the culvert at issue due to concerns about drainage and erosion and their impact on the road. The court further found that it is reasonable to expect road repairs and maintenance to "require leaving the road to accomplish."

¶ 11    The court next cited section 211 of the Restatement (Second) of Torts, explaining that this section provides that a legislatively imposed duty or authority "carries with it the privilege to enter land in the possession of another" for the purpose of performing that duty if it is reasonably necessary to do so. See Restatement (Second) of Torts § 211 (1965). The court found that, pursuant to this principle, the defendant's agents had a privilege to enter onto the plaintiffs' property to repair the culvert. However, the court found that this privilege did not extend to the overnight storage of equipment on the plaintiffs' property. The court concluded that the continued presence of the equipment on the plaintiffs' property after the repair was completed constituted a trespass.

¶ 12    The court further found that the damage to the plaintiffs' property "was incident to [the] defendant's efforts at needed or useful repair and maintenance of the roadway." The court concluded that because the defendant had a privilege to enter onto the plaintiffs' property to make the repair, the plaintiffs could not recover for this damage. However, the court found that the plaintiffs were entitled to nominal damages for the trespass that resulted from the continued presence of the equipment on their property after the repair was complete. The court entered judgment in favor of the plaintiffs in the amount of one dollar. The plaintiffs filed this timely appeal.

4

¶ 13                                    II. ANALYSIS

¶ 14    The plaintiffs argue on appeal that (1) the trial court erred by depriving them of their right to cross-examine a defense witness, (2) the trial judge demonstrated a bias against them, and (3) the trial judge engaged in *ex parte* communications with counsel for the defendant. They further contend that the court would have reached a different result had they been allowed further cross-examination of the witness and had the court not been biased. We find that the record on appeal is inadequate to allow us to resolve these claims. For this reason, we reject the plaintiffs' contentions.

¶ 15                                 A. Cross-Examination

¶ 16    The plaintiffs' first argument involves the cross-examination of one of the defendant's witnesses, Village Streets Superintendent Daniel Lawrence. Although the plaintiffs assert that he provided direct testimony for an hour and a half, the excerpt from the trial transcript that appears in the record does not include any portion of the direct examination of Lawrence. The excerpt also does not include the plaintiffs' full cross-examination of Lawrence. It does include two questions, both of which relate to a separate incident, which was at issue in one of the other cases that were tried that day. After Lawrence answered the last of the plaintiffs' questions, Patrick Ferrari stated, "Okay. Thank you. I can't think of anything else, Your Honor."

¶ 17    Counsel for the defendant then began her redirect examination of Lawrence. In pertinent part, she asked, "in regards to this culvert replacement, you testified that was an emergency repair?" Lawrence replied, "That is a correct statement, ma'am." Counsel then asked Lawrence to explain why it was an emergency. Lawrence explained that because there had been "some monster rains" in the area in recent years, another big rain event could have caused the road to wash out. It was therefore determined that the two culverts should be repaired as soon as possible to protect

the road from damage due to erosion and improper damage. He testified that it would have been impossible to repair the culvert running under the road adjacent to the plaintiffs' property without entering onto their property, explaining that the road was only 10 feet wide, and the repair required the use of large equipment.

¶ 18   When counsel concluded her redirect examination, the court questioned Lawrence. In response, Lawrence acknowledged that the defendant's agents left their equipment on the plaintiffs' property without permission after completing the project. The court inquired, "I'm wondering, if the job was done, why didn't they put everything on the flatbed to haul them out?" Lawrence explained that the repair was completed at the end of the day and that the overtime necessary to remove the equipment was not authorized.

¶ 19   After questioning Lawrence, the trial judge stated, "Thank you very much for your time. We've spent all day. Thank you." At this point, Mr. Ferrari interjected, "I have cross-examination." The judge replied, "We are out of time today." He noted that the court must "exercise its discretion with respect to the management of the court's time." The judge then stated, "I have a couple of questions for you in order to sort it all out." He asked for the opportunity to ask a few questions rather than proceeding with closing arguments. The court then asked, "Is that fair?" Both the plaintiff and counsel for the defendant responded in the affirmative. The excerpt from the transcript ends at this point.

¶ 20   On appeal, the plaintiffs contend that by refusing to allow further cross-examination and by not allowing them to present rebuttal evidence, the court ran afoul of the sixth amendment to the United States Constitution (U.S. Const., amend. VI) and section 2-1102 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1102 (West 2018)). They further contend that, had the court allowed further cross-examination or rebuttal evidence, they could have countered Lawrence's

6

testimony that (1) the work on the culvert was an emergency repair, (2) the Village of Glen Carbon repaired and re-seeded the plaintiffs' yard, and (3) the Village of Glen Carbon had an easement over a portion of the plaintiffs' property. In response, the defendant contends that (1) the plaintiffs forfeited review of this claim by failing to object at trial, and (2) because the record provided by the plaintiffs is inadequate to allow a review of their claim, we must presume that the court properly exercised its discretion in limiting cross-examination.

¶ 21    We will first address the defendant's forfeiture argument. Although the plaintiffs did not use the word "objection" at trial, Patrick Ferrari asked for a chance to conduct further cross-examination of Lawrence. The court indicated that would not be possible and stated, "You can't say that you haven't had a fair and decent hearing in terms of time." Ferrari responded, "She [counsel for the defendant] brought up some questions—" At this point, the trial judge cut him off, stating that the court must exercise discretion to manage court time. Thus, we find that the plaintiffs drew the court's attention to their desire for further cross-examination. However, the plaintiffs acknowledge that they did not attempt to introduce additional evidence in rebuttal until after the hearing ended. As such, while they did not forfeit their arguments concerning cross-examination, they did forfeit any argument concerning the admission of rebuttal evidence.

¶ 22    We now turn our attention to the merits of the plaintiffs' contention. The scope and extent of cross-examination is a matter within the sound discretion of the trial court. *Adams v. Sarah Bush Lincoln Health Center*, 369 Ill. App. 3d 988, 998 (2007). Absent a clear abuse of the court's discretion resulting in manifest prejudice the appellant, we will not reverse. *Id.* An abuse of discretion occurs only when the trial court acts arbitrarily, fails to use conscientious judgment, exceeds the bounds of reason, and ignores recognized principles of law or when no reasonable person could take the position adopted by the trial court. *Id.* at 1000.

7

¶ 23    Here, it is clear from the limited portion of the transcript included in the record that the plaintiffs were given the opportunity to cross-examine Lawrence until Ferrari indicated he could not think of any more questions to ask. It is also clear that they were given no opportunity to question Lawrence again after redirect examination and questioning by the court. What is unclear is the extent to which counsel for the defendant elicited any new information on during redirect examination that was not addressed during direct examination and cross-examination.

¶ 24    The limited record before us suggests that Lawrence initially testified to the emergency nature of the repair during either direct examination or cross-examination. As stated previously, counsel for the defendant asked Lawrence, "in regards to this culvert replacement, you testified that was an emergency repair?" As such, the record before us indicates that the plaintiffs did have at least some opportunity to question Lawrence on this topic.

¶ 25    Similarly, although the record contains the entirety of the defendant's redirect examination of Lawrence, it does not include any testimony related to alleged repairs of the plaintiffs' yard or an asserted easement. This suggests that the topics were raised during direct examination, thereby giving the plaintiffs the opportunity to question Lawrence about them during cross-examination.

¶ 26    Moreover, it is the plaintiffs' obligation, as the appellants, to provide this court with a record that is adequate to allow us to resolve their claims. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). If there are any gaps in the record that could materially affect our decision, we must resolve any doubt created by those gaps against the appellants. We must also presume that the missing portions of the record support the court's ruling. *Id.* Because the record before us is incomplete, we must resolve any doubts against the plaintiffs. We find nothing in the limited record before us to support the plaintiffs' contention that the trial court abused its discretion in limiting their cross-examination of Daniel Lawrence.

8

¶ 27                    B. Judicial Bias and *Ex Parte* Communication

¶ 28    The plaintiffs next contend that the court demonstrated bias against them and engaged in an *ex parte* communication with counsel for the defendant. We address these claims together because the plaintiffs' arguments on these two issues are intertwined.

¶ 29    The plaintiffs argue that the court demonstrated bias against them and in favor of the defendant in several ways. They allege that the trial judge "paused the trial midway briefly to openly and freely give the Defense Attorney, Catherine Schwarze, legal advice and to council [*sic*] her in a new, or alternative, legal strategy." They further allege that the trial court had *ex parte* communications with the defendant's attorney after the trial, during which the court informed her that she would be permitted time to submit written arguments. They assert that they witnessed this communication. Finally, the plaintiffs argue that the court demonstrated bias against them by applying the law incorrectly and by applying "2-209" (presumably section 2-209 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-209 (West 2016))) despite finding that the defendant's counsel did not properly cite that provision. We are not persuaded.

¶ 30    The plaintiffs correctly contend that a trial judge may not demonstrate any bias or prejudice in performing his or her duties. Ill. S. Ct. R. 63(A)(9) (eff. Dec. 16, 2020). They likewise correctly contend that a trial judge may not engage in *ex parte* communications with a party, with certain delineated exceptions that are not relevant here. Ill. S. Ct. R. 63(A)(5) (eff. Dec. 16, 2020). Trial judges are presumed to be fair and impartial. A party alleging judicial prejudice or bias has the burden of overcoming this presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). To do so, the party "must present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* Adverse rulings and alleged errors alone are not sufficient to demonstrate judicial bias.

9

*Id.* As we discussed previously, appellants must also provide this court with a record that is adequate to allow us to evaluate their claims. *Midwest Builder Distributing, Inc.*, 383 Ill. App. 3d at 655.

¶ 31 Here, the record does not contain any evidence to support the plaintiffs' assertion that the court paused the proceedings to give the defendant's counsel legal advice or their assertion that the court engaged in improper *ex parte* communications. The remainder of the plaintiffs' allegations of judicial misconduct relate to adverse rulings the plaintiffs contend were in error. However, as we have just explained, a court's rulings are not sufficient to support an allegation of judicial bias. *Eychaner*, 202 Ill. 2d at 280. For these reasons, we reject the plaintiffs' contentions that the court engaged in improper *ex parte* communications or otherwise demonstrated a bias against them.

¶ 32                                III. CONCLUSION

¶ 33 For these reasons, we affirm the trial court's judgment.


¶ 34 Affirmed.